IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MARCUS D. SMITH, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 4:21-CV-0532-DGK |
| ) | |
| DORIS FALKENRATH, ) | |
| Warden, Jefferson City Correctional Center, ) | |
| ) | |
| Respondent. ) | |

## ORDER DENYING HABEAS PETITION

This habeas case stems from Petitioner Marcus Smith's ("Petitioner") state court conviction for felony murder, two counts of armed criminal action, and one count of unlawful use of a weapon. Now before the Court is his fully briefed Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus. ECF No. 2. For the following reasons, the Petition is DENIED.

### Background

On a petition for a writ of habeas corpus brought by a person in state custody, a federal court views the facts and evidence in the light most favorable to the state court's verdict. *Hendricks v. Lock*, 238 F.3d 985, 986 (8th Cir. 2001); *see also* 28 U.S.C. § 2254(e)(1) (2009). The following summary of the evidence and procedural history of Petitioner's case is drawn from the Missouri Court of Appeals' per curiam decision denying Petitioner's direct appeal.

> Smith's convictions arise out of a shooting which occurred on August 16, 2011, at 6460 Northeast 43rd Terrace, a building in the Kensington Court apartment complex in Kansas City, Missouri ("Building 6460").
>
> On August 16th, three individuals (Nijina Turner, Taron Jones, and Kellie Strickland) were sitting and talking on the stairs of Building 6460 as Smith, his girlfriend Zukea Hughes, and her children arrived home to Hughes' apartment located in Building 6470 of the

complex. Smith became upset when Taron Jones greeted Hughes in a familiar way. After going inside, Smith came back out of Hughes' apartment and began yelling at Jones, questioning his relationship to Hughes. Strickland called the police. Before the police arrived, Hughes came out of her apartment and separated Smith from the group. Smith later returned and shook Jones' hand.

The police arrived after the situation had quieted, drove through the complex, and left without exiting their vehicle. After the police left, Smith re-emerged, and began yelling at the group gathered at Building 6460 for calling the police. Jones did not engage Smith and went into apartment 108 to calm down. While in the apartment, Jones called his brother Antonio and told him about the argument.

About this time, the victim, Samir Clark, arrived at apartment 108 to spend the night with his cousin, Voncell. Clark and Voncell went into Voncell's room to play video games.

Meanwhile, Smith became involved in a second altercation outside of Building 6470. Smith and the two individuals he confronted were each armed and pointed their guns at one another. Strickland again called the police, but they again arrived after the altercation had ended. When the police did arrive, they spoke to various residents, but then left.

After the police left, Smith again exited Hughes' apartment, shouting and upset that the police had been called. Smith told Taron Jones, "I can shoot you and your kids." Jones approached Smith intending to fight him. At the same time, Taron Jones' brother Antonio Jones arrived and jumped Smith. Smith, Taron Jones and Antonio Jones fought; ultimately Smith returned to Hughes' apartment. Smith then exited Hughes apartment with a gun. Taron Jones ran into Turner's apartment (unit 107), while Turner and her children sought refuge in apartment 108. Smith first fired at least four shots into Strickland's apartment, apartment 207. He then began firing into apartment 108. At least two of the shots into apartment 108 went into the bedroom where the victim and his cousin were playing. One of the bullets hit the victim in the neck, killing him. Smith and Hughes fled the scene.

> During their investigation, the police found a total of eleven bullet entry holes in the exterior of Building 6460. Two spent bullets were recovered from apartment 207, one bullet and two jacket fragments were recovered from apartment 108, and six spent Winchester 9 mm shell casings were found outside. Forensic testing showed that the two bullets recovered from apartment 207 and the bullet and one fragment from apartment 108 were fired from the same gun. The other fragment from apartment 108 was too damaged to make a determination. All of the shell casings were determined to be from the same gun (although it could not be determined whether the bullets and shell casings were fired from the same weapon).
>
> Smith was charged with four counts. The first count charged Smith with second-degree (felony) murder based on the killing of Clark as a result of the perpetration of the felony of unlawful use of a weapon (discharging a firearm into apartment 108). Count 2 charged Smith with armed criminal action related to the felony murder charge. In Count 3, Smith was charged with unlawful use of a weapon for discharging a weapon into apartment 207; Count 4 charged armed criminal action associated with the unlawful use of a weapon charge. Following a four-day jury trial, Smith was convicted on all counts.
>
> The court sentenced Smith as a prior offender to consecutive terms of life imprisonment for murder, fifteen years for unlawful use of a weapon, and fifty years on each count of armed criminal action.

*State v. Marcus D. Smith*, WD76465, at 2–4 (Mo. Ct. App. Feb. 17, 2015) (memorandum order); ECF No. 6-5.

On his direct appeal, Petitioner raised five claims: (1) the trial court committed plain error in entering convictions for both felony murder and unlawful use of a weapon because his simultaneous conviction of both offenses violated the common-law merger doctrine; (2) his rights under the Missouri Constitution were violated when the trial court did not instruct the jury on voluntary manslaughter as an alternative to the charge of second-degree felony murder; (3) the trial court erred in failing to exclude a 9mm semi-automatic pistol and 9mm shells found during a search of his girlfriend Zukea Hughes' apartment; (4) the evidence to convict him of unlawful use

of a weapon with respect to the shootings into either apartment 207 or apartment 108 was insufficient; and (5) his convictions for both felony murder and unlawful use of a weapon were prohibited by double jeopardy principles.

The court of appeals affirmed. It found that other than his sufficiency of the evidence claim, his claims had not been preserved for appellate review and did not rise to the level of plain error. As for the sufficiency of the evidence, it found sufficient evidence supporting a reasonable inference that Petitioner fired the shots into both apartments 207 and 108, including the shot that killed Samir Clark.

In his state post-conviction motion, Petitioner alleged three ineffective assistance of counsel claims, a claim that his sentence was excessive, and various pro se claims which the Court will not discuss here. The ineffective assistance of counsel claims alleged that trial counsel was ineffective for: (1) failing to object or move for a mistrial when the state adduced improper victim impact evidence at trial; (2) opening the door to evidence of the victim's good character by adducing evidence that cannabinoids were present in Clark's bloodstream when he was killed; and (3) failing to object when the state allegedly flashed the word "guilty" over the victim's photograph that was projected during closing argument. The trial court rejected these claims.

Petitioner timely appealed, raising the first two ineffective assistance of claims, but not the third. The Missouri Court of Appeals affirmed the trial court's decision denying post-conviction relief.

**Standard of Review**

Federal courts may not grant a writ of habeas corpus on any claim that was adjudicated on the merits in a state court proceeding unless adjudication of the claim,

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>     (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is contrary to clearly established Supreme Court law if the "state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or . . . decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000). A decision unreasonably applies clearly established Supreme Court law "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* This standard is objective, not subjective. *Id.* at 409. An unreasonable application of federal law is different from an incorrect application of federal law. *Id.* at 410.

As for the "decision based on an unreasonable determination of the facts" prong of the analysis, a factual finding made by a state court is presumed correct. 28 U.S.C. § 2254(e). The petitioner bears the burden of rebutting this presumption by clear and convincing evidence. *Id.*

## Discussion

Petitioner brings four claims for relief, one asserting insufficiency of the evidence and three alleging ineffective assistance of counsel. All are without merit.

**I. The Petition is denied.**

After carefully reviewing the Petition, the Court concludes an evidentiary hearing is not necessary to rule on the Petition because it is clear from the existing record that all of his claims lack merit.

Petitioner's first claim is that the trial court erred in denying his motion for judgment of acquittal. Petitioner contends the evidence at trial was insufficient to show that Petitioner fired the

5

Case 4:21-cv-00532-DGK   Document 14   Filed 12/14/22   Page 5 of 9

shots into apartment 108 which killed the victim, and the court of appeal's decision affirming the trial court was an unreasonable application of *Jackson v. Virginia*, 443 U.S. 307, 319 (1979),[1] as well as an unreasonable determination of the facts in the record.

This argument is unavailing. A federal habeas court's review of the sufficiency of the evidence is limited to deciding "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. The State is "not required to rule out every hypothesis except that of guilt beyond a reasonable doubt." *Flieger v. Delo*, 16 F.3d 878, 883 (8th Cir. 1994). If presented with evidence that allows conflicting inferences, this Court "must presume that the jury resolved such conflicts in the state's favor." *Id*. In this case, as the Missouri Court of Appeals observed on Petitioner's direct appeal, "three separate witnesses testified to seeing Smith firing in the vicinity of Building 6460" including Kelly Strickland, Diana Garcia, and Leon Newman. *State v. Smith*, WD76465, at 14. After seeing Petitioner fire a shot, Newman saw him walk around the back side of the building, supporting an inference that Petitioner fired into the other apartment as well. *Id*. Forensic testing also showed that the bullets fired into apartments 207 and 108 were fired from the same gun, and all of the shell casings found at the scene were fired from the same gun, so the jury had a reasonable basis to believe that Petitioner fired all of the bullets, including the one that killed the victim. *Id*.

Petitioner's ineffective assistance of counsel claims fare no better. To succeed on a claim of ineffective assistance of counsel, a movant must show that "(1) trial counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed

---

[1] The Amended Petition also makes a conclusory assertion that the court of appeal's decision was an unreasonable application of *In re Winship*. 397 U.S. 358, 363-364 (1970) (discussing the importance of not convicting when there is reasonable doubt about a defendant's guilt). But the Amended Petition never discusses *Winship* or its application to the facts of this case, and the Court sees no *Winship* violation here.

6

Case 4:21-cv-00532-DGK    Document 14    Filed 12/14/22    Page 6 of 9

by a reasonably competent attorney, and (2) trial counsel's deficient performance prejudiced the defense." *Armstrong v. Kemna*, 534 F.3d 857, 863 (8th Cir. 2008) (citing *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984)). Judicial review of trial counsel's performance is highly deferential, "indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." *Middleton v. Roper*, 455 F.3d 838, 846 (8th Cir. 2006). And trial counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. To establish prejudice, a movant must show that the outcome would have been different had counsel's performance not been deficient. If the movant cannot show a reasonable probability that the outcome would have been different, he cannot show prejudice. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). Failure to satisfy either prong is fatal to the claim, and the court need not reach the performance prong if the defendant suffered no prejudice from the alleged ineffectiveness. *See Pryor v. Norris*, 103 F.3d 710, 713 (8th Cir. 1997).

Petitioner cannot satisfy either prong. Petitioner's claim that his trial counsel was constitutionally ineffective for failing to object to extensive, allegedly inadmissible victim impact testimony from the victim's mother during the guilt phase of the trial is unavailing because trial counsel testified during the state court evidentiary hearing that this was a strategic decision. She testified she made several objections about relevance and did not make further objections, including a continuing objection, because she believed she had preserved the issue for appeal and asserting additional objections would merely highlight the testimony for the jury. Additionally, even if this testimony had been excluded, there was no reasonable probability the outcome would have been any different, because there was overwhelming evidence of Petitioner's guilt. Thus, Petitioner cannot show prejudice either.

Petitioner's claim that trial counsel was ineffective for questioning the medical examiner about the victim's blood toxicology test after trial counsel initially declined to do so and explained the dangers of such questioning, is also without merit. The record is clear that trial counsel did not want to ask such questions—questions which opened the door to the prosecution eliciting voluminous testimony of the victim's good character—and did so only because Petitioner was "very insistent" that she do so, despite her warning him that there would be adverse consequences. The Eighth Circuit has recently made clear that an attorney is not ineffective if, after warning the client of the dangers of pursuing a given trial strategy, the attorney acquiesces to the client's request to pursue that strategy. *Taylor v. Steele*, 6 F.4th 796, 802-803 (8th Circ. 2021). But even if trial counsel were somehow ineffective in acceding to Petitioner's wish to question the witness, Petitioner cannot satisfy the prejudice prong of the analysis given the overwhelming evidence of his guilt.

Finally, Petitioner's last claim, that trial counsel was ineffective for failing to object to the prosecution's allegedly flashing the word "guilty" over the victim's photograph during closing argument, is procedurally defaulted. Petitioner raised this claim in his initial post-conviction motion to the trial court, but then failed to raise it in his subsequent post-conviction appeal. As a result, this Court may not review it. *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994) ("Failure to raise a claim on appeal from the denial of a post-conviction motion erects a procedural bar to federal habeas review.").

Petitioner's assertion that he can show cause and prejudice for this default under *Martinez v. Ryan*, 566 U.S. 1 (2012), is unavailing. *Martinez* established a narrow exception to the normal rules of federal procedural default, holding that inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial. *Id*. at 11. But "*Martinez* offers no support . . . for the contention that

the failure to preserve claims on appeal from a post-conviction proceeding can constitute cause" to excuse a procedural default. *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012). Petitioner argues that it is post-conviction counsel's failure to locate the State's alleged PowerPoint during discovery or present better evidence in support of his claim that is the cause of his default. Am. Pet. at 19. But those things did not cause the procedural default. It is Petitioner's failure to *raise* the claim on appeal, not marshal better evidentiary support for it in the motion court, that caused the default. Thus *Martinez* is inapplicable.

## II. A certificate of appealability should not be issued on any of Petitioner's claims.

The Court declines to issue a certificate of appealability on any of Petitioner's claims. To issue a certificate of appealability a district court must find that the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Tiedman v. Benson*, 122 F.3d 518, 521 (8th Cir. 1997). This requires the petitioner to "show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quotation omitted).

After reviewing the issues raised in the Amended Petition, the Court holds Petitioner has failed to make a substantial showing of the denial of a constitutional right on any of his claims, and reasonable jurists could not debate that the Petition should have been resolved differently.

## Conclusion

For the reasons discussed above, the Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is DENIED, and a certificate of appealability is not issued.

**IT IS SO ORDERED.**

Date:  December 14, 2022  /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT